JOSEPH J. PEARCE *et al.*, plaintiffs in error, *vs.* E. M. BRUCE & Co. defendants in error.

1. When A, a warehouseman, files a bill against B and C, partners, also warehousemen, alleging that they, as factors for D, had, in conjunction with D, illegally got possession of certain cotton which had been stored with A by various persons, and had removed it out of this State, to be sold on D's account, and prayed that B and C be enjoined from paying the proceeds to A, and that they be decreed to account to A for the value of the cotton :

*Held*, That this is a bill for account, and, that the true owners of the cotton (A's principals) ought to be parties to the bill.

2. In equity, all parties at interest must be made parties to a bill, if they be within the jurisdiction, and when a bill is filed against two partners, who are both served, and answer, (the bill praying an account for partnership acts,) and one of the partners dies :

*Held*, That his personal representatives must be made parties to the bill, unless it affirmatively appears that he died non-resident, and that the estate has no interests in this State.

3. When a bill was filed against a partnership, and after both have answered, one of the firm dies, it is not error to permit, before parties are made, an amendment, correcting a misnomer as to the Christian name of the deceased partner.

4. When a suggestion is, in fact, made of the death of a party, and entered on the Judge's docket, it is not error, even after judgment, to allow the entry to be made on the minutes, *nunc pro tunc*.

5. It is the duty of the Clerk to transcribe on the minutes, each day, all the entries on the Judge's docket showing action in a cause, when that action does not otherwise appear on the minutes.

Equity.  New-trial granted.  By Judge GIBSON.  Richmond Superior Court.  January Term, 1868.

The bill of Joseph J. Pearce against E. M. Bruce & Co. and James Pearce, contained the following, in substance : In February, 1865, complainant was a warehouse and commission merchant in Augusta, Ga., and had stored in his warehouse a large quantity of cotton, belonging to divers persons, to whom he had given his warehouse receipts for the same.  On the tenth day of that month, the military authorities, under the pretense of public necessity, without complainant's consent, took all of the cotton from the warehouse, and about six hundred bales of it were left on the

Pearce *et at.*, *vs.* Bruce & Co.

bank of the river.   During said month there was a freshet in the river; five hundred and thirty bales of said cotton were rescued and removed from the river bank to the warehouse of Flemming & Wheless, in said city.   The military authority assisted in this removal.   Afterwards, James Pearce (and others unknown) fraudulently, etc., procured the following order from C. H. Grosvenor, Brevet Brig. General and Provost Marshal General, of the United States, in said city :

HEADQUARTERS DEPARTMENT OF GEORGIA,
Office of the Provost Marshal General,
Augusta, Ga., August 25, 1865.

Messrs. Flemming & Wheless, warehousemen:  You will forthwith deliver to James Pearce one hundred and thirty (130) bales of cotton, more or less, stored in your warehouse by Wm. A. Matthews, said Pearce paying your warehouse charges for storage.

By command of Major General Steadman.

C. H. GROSVENOR,
Brevet Brig. Gen. and P. M. G.

(In pencil across the face) "Shipping mark W. E."

This Wm. A. Matthews was a negro, and, when said cotton was taken to the warehouse of Flemming & Wheless, was a slave, in their employment, and had no right, title or interest, in the cotton.   Afterwards, on the 28th of August, 1865, said James Pearce procured another order from Grosvenor, the caption and signature of which is as above, the body of which was in these words :

"You will deliver the cotton to Mr. Pearce as directed, it appearing that it is not 'Confederate or abandoned.'  The military will sustain you."

Armed with these orders, James Pearce and his confederates arranged with Elisha M. Bruce and Thos. L. Morgan, factors, commission merchants, and cotton agents of said city, under the firm name and style of E. M. Bruce & Co., for the delivery and shipment of said cotton.   E. M. Bruce & Co., under and by force of said orders, received from Flemming & Wheless one hundred and fifteen bales of said cotton, (the marks of which had become illegible or obliterated by

Pearce *et al.*, *vs.* Bruce & Co.

long storage and exposure to the weather,) worth $25,000 00, shipped the same out of this State, and sold it on account of James Pearce and his confederates. Said Bruce and said Morgan knew, when they got the cotton and shipped it, that it was not "Confederate or abandoned" cotton; that said James Pearce had no legal or equitable title thereto, that said Matthews was a negro, and his pretended claim invalid, and that said orders were illegal, unjust, and oppressive. Subsequently, E. M. Bruce & Co. advanced $8,000 00, or other sum, on said cotton, to said James Pearce and Grosvenor and their confederates.

The complainant having such special property in said cotton, and fearing that he might be held accountable therefor to those holding his receipts, and having no other adequate redress, prayed that E. M. Bruce & Co. should be enjoined from making any further advances on said cotton, or selling the same, or paying over the proceeds thereof to said James Pearce, or his associates, and that they and James Pearce, and their confederates, should account for damages, and for the value of said cotton, to the complainant, etc.

The injunction was granted by Judge Hook. Bruce & Morgan were served; as to James Pearce, there was a return of *non est.* Bruce & Morgan filed their joint answer, in substance stating that they knew nothing about the facts stated, except that James Pearce, about the first of September, 1865, employed them to ship one hundred and twelve bales of cotton, as his property, on account of James Pearce & Co., to Watts, Crane & Co., of New York; that he delivered to their shipping clerk orders on Flemming & Wheless for the cotton, and procured the permission of the military for its shipment; (military permission for such purpose being then absolutely necessary); that they advanced to James Pearce about $10,000 00, but never advanced anything to any one else; that they had made advances of $2,500 00 for expenses of shipping said cotton, and that the only interest they had, or ever had had, in the cotton, was their claim on the same for such advances and expenses. They said they believed that the cotton had been shipped from New

York to Liverpool, and perhaps it was sold.   They denied all fraud and combination, or knowledge of any thing of the kind.   When this answer was filed, did not appear, but it was sworn to in April, 1866.   In January, 1868, Morgan filed an amendment to his answer, averring that, if the alleged tort was true, it was the act of Bruce only, without direct or indirect co-operation by him ; that since said answer was filed, Bruce had died, and " his death had been suggested to this Court ;" that no representative of Bruce had been made a party, and that the complainant could not proceed without such representative was made a party.   The Court decided that the cause could proceed against the survivors. At the same time, he further amended, by answering that E. M. Bruce & Co. was composed of himself and Eli M. Bruce, and Elisha M. Bruce was the party sued and served ; that he did not know this when the answer was filed, and now plead that his partner, Eli M. Bruce, was never served.

When complainants' solicitors were notified of this, they moved to amend the record by substituting Eli for Elisha, in the name of Bruce, wherever it occurred.   The Court allowed this amendment over the objection of the defendants' solicitors.   The case was tried, and resulted in a verdict for the complainant for $19,444 34, with interest from 28th August, 1865.   What the charge of the Court was does not appear, except as stated in the motion for a new trial.   The defendants moved for a new trial, on the grounds that the Court erred,

1st. In holding that the cause could proceed without Bruce's representative being a party.

2d. In holding that the owners of the cotton were not necessary parties to the bill.

3d. In charging the jury, " If a party assert the right of another over property, after notice from the owner, it will be evidence of conversion."

4th, 5th, 6th. Because the verdict was against the law and evidence, for reasons therein stated.

7th. Because the verdict was contrary to the evidence. Because, if any such tort or wrong, as that charged by the bill,

was committed by Bruce, it was before Morgan was his partner, and, therefore, no recovery could be had against Morgan.

8th. For the same reason, there could be no recovery against Morgan, as surviving partner.

9th and 10th. Even if he were a partner, the evidence did not connect him with the *tort*, and, therefore, the verdict was wrong.

11th. Because of certain newly discovered evidence set out in the record.

This motion was amended by adding other grounds for a new trial, as follows:

1st. It was necessary that James Pearce should be served, in order to do complete justice.

2d. Because no allowance was made by the jury for said advances and expenses.

3d. Because complainant, having renounced all claim on the cotton, he could not recover.

4th. Because no damage to complainant was shown by the evidence.

5th. Because Bruce's death was not suggested upon the record, and no proceeding, in said case, could be had until such suggestion was made.

It appeared that Bruce's death had been suggested on the Judge's docket, but not on the minutes. Complainants' solicitors asked to put it upon the minutes, *nunc pro tunc*, which the Court then allowed, over the objection of defendants' solicitors.

The Court granted a new trial upon the 7th, 8th, 9th, and 10th grounds, overruling the other grounds.

Complainants' solicitors brought the cause up for review, assigning for error 1st, 2d, 3d, 4th, and 5th, that the Court erred in granting the new trial, for any of the reasons stated in said 7th, 8th, 9th, and 10th grounds of the motion.

6th. In not putting the grant of the new trial upon condition, that complainants abate or write off, from said verdict, the part not sustained by sufficient evidence.

7th. In granting a new trial, as to the whole case, and not

Pearce *et al.*, *vs.* Bruce & Co.

confining it to the question of said advances, diminishing the recovery.

8th. In holding that these advances, or any part of them, ought to be allowed to said survivor.

9th. In holding that it was not sufficiently shewn that Morgan & Bruce were partners prior to 1st of September, 1865, and that, therefore, Morgan was not liable.

And in the same bill of exceptions, the defendant's solicitors brought up, for review, the decision as to said 1st, 2d, 3d, 4th, 5th, 6th, and 11th grounds, for new trial, and 1st, 3d, 4th, and 5th grounds in the amended motion for new trial, and upon the ground that the Court erred in allowing Bruce's death suggested on the minutes of the Court at the time it was done.

WALTON, SHEWMAKE, for plaintiffs in error.

JOHNSON & MONTGOMERY for defendants in error.

McCAY, J.

If this were an action at law, by the plaintiff, founded upon his special property in the cotton, the subject of dispute, the authorities are abundant that he might sue alone. A bailee of goods, on store, may sue a stranger who interferes with them, for the wrong to his possession.

1. But this is a bill in equity, charging that the defendants had got possession of the cotton, sent it out of the State for sale, and were about to pay the proceeds, when finally sold, to James Pearce, and it prayed an injunction against this disposal of the proceeds, and that the defendants *should account with the plaintiffs for the proceeds.*

2. This is altogether a different thing from a proceeding at law, based upon the special property of the plaintiff. It is a regular proceeding in equity for an account and settlement between the parties in relation to the subject matter of the dispute. And it is well settled, that, in equity, in such cases, all parties in interest must be before the Court. Equity will not do justice by halves. It will grasp the whole case, and settle

VOL. XXXVIII—29.

Pearce *et al.*, *vs.* Bruce & Co.

it. The true owners of the cotton are directly interested in this *account*, and must be made parties, or some good reason shewn why this cannot be done. The special interest of the complainant, and his liability to the true owners on his receipts, gives him sufficient interest to be a party, and the bill may be amended so as to include the others.

We may remark, that equity would have no jurisdiction of this transaction at all on the *tort* alone. It is only because an account is prayed that Chancery will interfere, and the parties must, therefore, be such as have a right to pray an account. The *tort*, as such, has nothing to do with it. The case proceeds on the ground that the defendants have got the complainants' property, and must account for it. This bill was filed during the life-time of Bruce. He and his partner, Morgan, were both served, and both *answered.* We do not think the simple death of Bruce authorized the proceeding to go on against the survivor. Were this an action at law, this would, without doubt, be the proper course. The survivor, on the death of a partner, is, at law, the only person to sue or to be sued. But in equity this rule is modified by the settled principle, that all parties in interest must be before the Court. The death of a partner dissolves the partnership, and as to all choses in action, the legal title and right to sue is in the survivor; but, with certain qualifications, the personal representatives of the deceased become tenants-in-common with the survivor of all the partnership property and effects in possession. Story on Partnership, sec. 346. The estate of Bruce is directly interested in the result of this decree. It is a tenant-in-common with Morgan in the effects, out of which it must be paid, and unless there be some good reason shown, as that there are no effects, we do not see how the case can go on without a representative of Bruce. Story's Equity Pleading, sec. 167. Nor do we think section 3396 of the Code is against this view. That section does not mention the case of partners, and it provides that the plaintiff may proceed against the survivor to the extent of *his liability*. But here is a proceeding, not only against Morgan, but, in its necessary effect, against the assets

Pearce *et al.*, *vs.* Bruce & Co.

of the firm, in which, as we have said, the estate of Bruce has a common interest with Morgan.   If it should be shown that Bruce's representatives have no interest in these effects, as by an allegation that there are no firm assets, or that they are wholly insufficient to pay the debts of the concern, that might furnish an excuse for not making the representative a party.   But as the case appears in this record, we think the Court right in granting a new trial on this ground.

Nor do we see any error in allowing the correction of the mistake in the name of E. M. Bruce.   These were parties to the cause in Court, and this was a mere error in description. which, we think, might be corrected on motion at any time,

4. The permission to enter on the minutes the order suggesting the death of Bruce, was not error.   The death had been suggested at the proper time, and noted by the Judge on his docket.   The Clerk had failed to transfer this entry to the minutes.   It was a mere misprision of the Clerk.   The minutes did not show the true history of the case as the facts occurred, and it was the duty of the Court, at any stage of the proceedings, even after judgment, to make the minutes conform to the truth.   The Judge's docket is a mere *memorandum* for his own convenience, and is not the record.

5. It is the duty of the Clerk to transcribe, each day, into the minutes, the continuances, suggestions, etc., showing progress or action, by the Court, in the cause where that action does not otherwise appear upon the minutes.   If, in any case, the Clerk fails to do this, surely the Court may, at any time, have this misprision corrected.

Judgment affirmed.